UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GASPARITO URIANA-URIANA,
    Prisoner,

v.                                  Case No. 8:24-cv-2497-KKM-NHA
                                    Case No. 8:23-cr-195-KKM-NHA

UNITED STATES OF AMERICA,
    Respondent.
_____

ORDER

Prisoner Gasparito Uriana-Uriana moves to vacate his 132-month sentence for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States. *See* 28 U.S.C. § 2255. Uriana-Uriana claims that his sentence was improperly enhanced for possession of a dangerous weapon and that counsel rendered constitutionally ineffective assistance at sentencing. Because his claims lack merit, his motion to vacate is denied.

I.  Background

A grand jury indicted Uriana-Uriana with one count of conspiring to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b) and 21 U.S.C. § 960(b)(1)(B)(ii); and one count of possessing with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii). (Crim. Doc. 1.) Uriana-Uriana pleaded guilty as charged without a plea agreement. (Crim. Docs. 44, 46, 47, and 54.)

The presentence report calculated an advisory guidelines range of 210 to 262 months based on Uriana-Uriana's total offense level of 37 and his criminal history category of I. (Crim. Doc. 59 at ¶ 53.) Counsel objected both to a two-level enhancement for possession of a dangerous weapon and to Uriana-Uriana's ineligibility for safety-valve relief and zero-point offender status. (Crim. Doc. 59 at 21–22; Crim. Doc. 71; Crim. Doc. 82 at 5, 7 and 9.) Counsel argued that Uriana-Uriana lacked knowledge of the firearm that law enforcement recovered from the vessel. (Crim. Doc. 82 at 5–6.)

2

The district court overruled counsel's objections. (*Id.* at 14, 31, and 36.) The district court found that sufficient evidence established that Uriana-Uriana knew the firearm was on the vessel based on the uncontested facts that the vessel was small, the firearm was discovered under a five-gallon bucket "covering the most valuable items on any go-fast vessel, mainly the cellphones and satellite phone that contained the [vessel's destination] coordinates[,]" and Uriana-Uriana admitted that he was provided the GPS system with preprogramed coordinates.[1] (*Id.* at 14–15.) Uriana-Uriana failed to show that a connection between the firearm and the offenses was clearly improbable because the "go-fast vessel is extremely small, [and] the gun was found in the same bucket as the most important navigation tool on the boat, which is the satellite phones." (*Id.* at 21–22 and 31.) And, it was reasonably foreseeable, the district court concluded, that the firearm would be used in connection with drug-trafficking offenses considering the volume of cocaine. (*Id.* at 31–32.) Citing Uriana-Uriana's personal history and characteristics, the district court varied downward from

---

[1] Additionally, counsel represented that Uriana-Uriana's personal items were found near the five-gallon bucket, which further confirmed he possessed the firearm in connection with the drug-trafficking offenses. (*Id.* at 18 and 31.)

the advisory guidelines range and sentenced him to concurrent sentences of 132 months. (Crim. Doc. 76; Crim. Doc. 77 at 3.)

Uriana-Uriana filed no appeal. He now moves to vacate his sentence and claims that (1) his sentence was improperly enhanced for possession of a dangerous weapon and (2) counsel rendered ineffective assistance at sentencing by not objecting to the enhancement. (Civ. Doc. 1.) The United States responds that Uriana-Uriana's claims are meritless.[2] (Civ. Doc. 3.)

## II.   Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States*

---

[2] The United States correctly argues that Uriana-Uriana procedurally defaulted his sentencing claim by neglecting to raise it on direct appeal. For judicial economy, the district court rejects Uriana-Uriana's sentencing claim as meritless. *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("As we have said many times and as the Supreme Court has held, a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

*v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)). For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

5

>The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

6

judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Uriana-Uriana must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Uriana-Uriana must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

7

investigation." 466 U.S. at 690–91. A prisoner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III.   Ground One

Uriana-Uriana claims his sentence was improperly enhanced for possession of a dangerous weapon, specifically the firearm that law enforcement recovered from

8

the vessel. Despite initially denying his knowledge of the firearm, Uriana-Uriana now acknowledges, "[o]f course [he] was aware of the weapon's presence[,]" but denies he had "the ability or intent to possess [it.]" (Civ. Doc. 1 at 15.) He argues that his codefendant possessed the firearm, and he "did not try to take the weapon from [his codefendant]." (*Id.*) He emphasizes that he "was not found with the weapon on him[,]" he was not the captain of the vessel, and "at no time [did he have] dominion over the vessel." (*Id.* at 4.)

U.S. Sentencing Guidelines § 2D1.1(b)(1) authorizes a two-level enhancement for possession of a dangerous weapon in connection with a drug-trafficking offense. "The government bears the initial burden of showing by a preponderance of evidence that a firearm was present at the site of the charged conduct or that the defendant possessed a firearm during conduct related to the offense of conviction." *United States v. Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024) (citing *United States v. Stallings*, 463 F.3d 1218, 1221 (11th Cir. 2006)). "'[P]roximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1).'" *United States v. Utnick*, No. 24-11647, 2025 WL 1157025, at * 2 (11th Cir. Apr. 21, 2025) (quoting *United States v. Carillo-Ayala*, 713 F.3d 82, 96 (11th Cir. 2013)). "In other words, 'the

9

government benefits from a rebuttable presumption that a firearm, if present—just present, not present in proximity to drugs—is connected with the offense.'" *United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021) (quoting *Carillo-Ayala*, 713 F.3d at 90). "If the government meets its initial burden, 'the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable." *Graham*, 123 F.4th at 1288 (quoting *Stallings*, 463 F.3d at 1220).

Uriana-Uriana's claim fails. The undisputed record shows that he cannot meet his "heavy" burden of demonstrating that a connection between the firearm and the drug-trafficking offenses was clearly improbable. *Carillo-Ayala*, 713 F.3d at 90 (explaining that the enhancement "compels the government to show mere presence but places a heavy burden of negation on the defendant"). Law enforcement discovered Uriana-Uriana and his codefendant on board a small go-fast vessel that contained approximately 23 bales of cocaine and a loaded firearm. (Crim. Doc. 59 at ¶7.) The firearm was discovered underneath a bucket that was covering the most valuable items on the vessel—cell phones and satellite phones that contained the coordinates to the vessel's destination. (*Id.* at ¶ 11.) Uriana-Uriana admits that he received the vessel's destination coordinates, and he and his codefendant were at sea

for three days before law enforcement intercepted the vessel. (*Id.* at ¶11.) Uriana-Uriana cannot meet his heavy burden of negating a connection between the firearm and the offenses given these undisputed facts.

Moreover, neither the fact that the firearm was not discovered on Uriana-Uriana's body nor the fact that he was not the vessel's captain undermines the connection between the firearm and the drug-trafficking offenses. "[The Eleventh Circuit] has applied the § 2D1.1(b)(1) enhancement broadly when firearms are found in the same location where the defendant commits a controlled substance offense." *United States v. Delgado*, 981 F.3d 889, 902 (11th Cir. 2020) (affirming the application of the enhancement after the district court concluded that "these firearms were available for [the defendant] should he need to protect himself or the drugs"). Here, although neither codefendant claimed to be the captain of the vessel, the firearm was nevertheless available to Uriana-Uriana to protect himself or the drugs. *See Carillo-Ayala*, 713 F.3d at 92 ("A firearm found in close proximity to drugs . . . simply '*has*'—without any requirement for additional evidence—the potential to facilitate the drug offense."); *United States v. Santos-Santana*, No. 22-10367, 2022 WL 17973602 (11th Cir. Dec. 28, 2022) (affirming that the defendant

possessed the firearm in connection with the drug-trafficking offense "because the vessel that held the firearm and the drugs was small and confined").

## IV. Ground Two

Uriana-Uriana claims counsel rendered constitutionally ineffective assistance at sentencing by not objecting to the two-level enhancement for possession of a dangerous weapon. (Civ. Doc. 1 at 14–18.) He argues that counsel should have emphasized his lack of control over, or access to, the firearm, and that he was not the captain of the vessel.[3] (*Id.* at 5.)

Uriana-Uriana cannot show that counsel performed deficiently by not successfully objecting to the enhancement for possession of a dangerous weapon. "[The circuit court] has long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592

---

[3] Additionally, Uriana-Uriana complains that counsel "spent no time discussing" the presentence report, failed to prepare him for the presentence interview, and "spent less than 15 minutes talking to [him]." (Civ. Doc. 1 at 14–18.) The district court rejects these complaints without discussion because Uriana-Uriana neglects to support them with any details or elaboration. *See Presendieu v. United States*, No. 21-12552, 2022 WL 41151447, at *5 (11th Cir. 2022) (quoting *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (disavowing relief when a movant's claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible")).

F.3d 1144, 1164 (11th Cir. 2010). The record shows that counsel repeatedly objected both to a two-level enhancement for possession of a dangerous weapon and to Uriana-Uriana's ineligibility for safety-valve relief and zero-point offender status. In a sentencing memorandum, counsel argued that the enhancement was inapplicable because no evidence was presented to show that Uriana-Uriana knew of the firearm's presence before he was detained. (Crim. Doc. 71 at 2.) At sentencing, counsel repeated the objection. (Crim. Doc. 82 at 5–7.) Counsel further argued that Uriana-Uriana was not the captain or in charge of the vessel. (*Id.* at 7 and 40.)

Although the district court ultimately overruled counsel's objections, Uriana-Uriana cannot show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Indeed, Uriana-Uriana fails to suggest what more counsel could have argued to support the objection. Uriana-Uriana's undeveloped claim "that a different strategy would have been better does not meet his burden under *Strickland*. *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (citing *Ward*, 592 F.3d at 1164 ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

Furthermore, Uriana-Uriana cannot show that he was prejudiced by counsel's performance. To demonstrate prejudice, Uriana-Uriana must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different absent counsel's allegedly deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020 (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)). The record shows that Uriana-Uriana received a two-level enhancement for possession of a dangerous weapon not because of counsel's ineffectiveness but because, as stated by the district court, he failed to meet his heavy burden to show that a connection between the firearm and the drug-trafficking offenses was clearly improbable.

Moreover, nothing in the record suggests that the district court would have imposed a sentence shorter than 132 months—which was a significant downward variance from the advisory guidelines range of 210 to 262 months—absent counsel's performance. In evaluating the 18 U.S.C. § 3553(a) factors, the district court emphasized the seriousness of the offense, which involved more than 575 kilograms of cocaine valued at nearly $11 million (Crim. Doc. 82 at 62–63):

> As is true with a lot of these boat cases, the amount of drugs that is being transported is enormous. I think we lose sight of that sometimes, because we compare it to

>other boat cases where large volumes of cocaine and the like are being moved. But that weighs in favor of a substantial sentence, because the circumstances and the nature of the offense are serious.
>
>Your role was serious. You are literally the one who was transporting the drugs. They have devastating consequences in the communities to which they are distributed, which presumably is the reason that Congress sets forth significant penalties. . . .
>
>[T]he crime that you actually committed is serious and the sentence needs to reflect the seriousness of that. It needs to provide for just punishment, it needs to deter those who might be similarly inclined to participate in the same way[.]

Accordingly, Uriana-Uriana has not shown a reasonable probability of a different sentence absent counsel's performance.

### V.   No Certificate of Appealability

Uriana-Uriana is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant

has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Uriana-Uriana must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Uriana-Uriana is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## VI. Conclusion

Uriana-Uriana's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Uriana-Uriana must obtain permission from the circuit court to appeal in forma pauperis. The clerk is directed to enter a **JUDGMENT** against Uriana-Uriana, terminate any pending motions, **CLOSE** this case, and enter a copy of this order in the criminal case.

**ORDERED** in Tampa, Florida, on May 28, 2025.

Kathryn Kimball Mizelle
United States District Judge